IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JASON SCUTT,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>MARTIN NORTON; CARRIE JOHNSON aka KAREN NORTON,[1]<br><br>　　　　Defendants. | CIVIL NO. 21-00280 JAO-KJM<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE ALL CLAIMS |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE ALL CLAIMS**

　　　This case concerns alleged discrimination against pro se Plaintiff Jason Scutt ("Plaintiff") by her former landlords, pro se Defendants Martin Norton ("Martin") and Carrie Johnson ("Carrie") (collectively, "Defendants"), under Title VIII of the Civil Rights Act of 1968, also known as the Fair Housing Act ("FHA").[2] Defendants seek dismissal of all claims with prejudice. The Court finds this matter suitable for disposition without a hearing pursuant to Rule 7.1(c) of the Local

---

[1] It is unclear why Plaintiff offers "Karen Norton" as an alternative for Carrie and claims not to know the correct spelling, ECF No. 13 at 3 n.1, when the exhibits she attached to her Second Amended Complaint ("SAC") identify a "Carrie Johnson."

[2] *See United States v. Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1376 (9th Cir. 1997) (identifying Title VIII as the FHA).

Rules of Practice for the U.S. District Court for the District of Hawaii.  For the following reasons, Defendant's Motion to Dismiss, ECF No. 33, is GRANTED.

## BACKGROUND

Plaintiff commenced this action on June 21, 2021, alleging that Defendants violated the FHA by harassing her and using slurs to target her religion and gender. ECF No. 1 at 6; ECF No. 1-1.  The Court dismissed the Complaint with leave to amend.  ECF No. 7.

On July 12, 2021, Plaintiff filed a First Amended Complaint ("FAC") reasserting the FHA claim and referencing Title VI of the Civil Rights Act of 1964. ECF No. 10.  The Court dismissed the FAC ("Second Dismissal Order"), concluding that Plaintiff's conclusory allegations regarding Defendants' conduct insufficiently demonstrated that they caused the purported harm *because of* her gender or religion, or any other protected ground, and in fact appeared to concern general landlord-tenant disputes.  ECF No. 12 at 6–7.  The Court gave Plaintiff a final opportunity to cure the deficiencies identified in the Second Dismissal Order and explained that she must "present facts showing that Defendants acted *because of* her gender/LGBTQ status or religion" because "[i]t is not enough to merely speculate that they did."  ECF No. 12 at 7.

Plaintiff filed the SAC on July 25, 2021, which exclusively asserts an FHA claim.  ECF No. 13.  She avers that Defendants were unable to evict her following

"prohibited conversations about religion and racist political views" and instead violently forced her to vacate the property. *Id.* at 1. Plaintiff accuses Defendants of engaging in racist and anti-LGBTQ harassment. *Id.*

On September 17, 2021, Defendants filed an Answer. ECF No. 27. They subsequently filed this Motion to Dismiss with Prejudice all Claims. ECF No. 33. Plaintiff filed an Opposition on October 19, 2021. ECF No. 39. Defendants filed their Reply on November 15, 2021. ECF No. 42.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure ("FRCP") 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in original). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted).

Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice. *See Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The tenet that the court must accept as true all of the allegations contained in the complaint does not apply to legal conclusions. *See id.* As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)) (some alterations in original).

If dismissal is ordered, the plaintiff should be granted leave to amend unless it is clear that the claims could not be saved by amendment. *See Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007) (citation omitted).

# DISCUSSION

## I. The Court Construes The Motion To Dismiss As A Motion For Judgment On The Pleadings

As a preliminary matter, the Court notes that Defendants filed this Motion after they filed their Answer. FRCP 12(b)(6) motions must be filed *before* a responsive pleading. *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."); *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004) (citation omitted). The Court therefore construes the Motion as a motion for judgment on the pleadings. *See* Fed. R. Civ. P. 12(h)(2) ("Failure to state a claim upon which relief can be granted . . . may be raised . . . by motion under Rule 12(c)[.]"); *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980) (treating a motion to dismiss as a motion for judgment on the pleadings because FRCP 12(h)(2) specifically authorizes a motion for judgment on the pleadings to assert failure to state a claim, which is only permissible after the pleadings are closed under FRCP 12(c); and noting that FRCP "12(c) and 12(h)(2) together constitute a qualification of [FRCP] 12(b)(6)"); *Elvig*, 375 F.3d at 954 (explaining that a motion to dismiss filed after the answer should have been treated as a motion for judgment on the pleadings pursuant to FRCP 12(c) or 12(h)(2)).

An FRCP 12(c) motion is functionally equivalent to an FRCP 12(b)(6) motion so the Court applies the same standard of review. *See Gregg v. Haw.,*

*Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (citation omitted). "A judgment on the pleadings is properly granted when, 'taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law.'" *Id.* (citation omitted).

## II.  Plaintiff's FHA Claim Fails

The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The Ninth Circuit applies the Title VII discrimination analysis in evaluating FHA claims. *See Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) (citation omitted). FHA discrimination claims may be established "under a theory of disparate treatment or disparate impact." *Id.* (citation omitted). To state a prima facie case of disparate treatment, Plaintiff must allege that (1) her rights are protected under the FHA and (2) she suffered a distinct and palpable injury as a result of Defendants' discriminatory conduct. *See id.* Discriminatory intent or motive is a requisite element of any disparate treatment claim under the FHA. *See Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012) (identifying discriminatory intent as a requirement in a disparate treatment claim under Title VII).

Plaintiff *concludes* that Defendants violated the FHA by changing the terms, conditions, and privileges of the rental after discovering her religious beliefs and sex/sexual orientation.  ECF No. 13 at 8.  However, the SAC advances contradictory and deficient allegations that do not support an FHA claim.  Plaintiff entered into a six-month lease with Defendants beginning on July 31, 2020 and concluding on January 31, 2021.[3]  ECF No. 13-1 at 13.  She points to grievances spanning from the outset of her lease as evidence of Defendants' culpability, yet admits that the purportedly discriminatory/harassing conduct did not commence until November or December 2020.  The vast majority of the alleged landlord-tenant and other grievances are unconnected to any racial, religious, or sex discrimination against her, and are unsupported by the Exhibit Plaintiff submitted with her Opposition.[4]  And many of the instances where Plaintiff offers accusations

---

[3] Plaintiff erroneously states that the lease began on July 1, 2020.  ECF No. 13 at 6–7.

[4] For example, Plaintiff claims that (1) she received harassing texts about her bankruptcy, yet a text she attached merely stated, "Morning AJ, I got this in mail, anything I need to worry about? (your Ch. 7 filing declaration)," ECF No. 13-1 at 3; (2) Defendants kept the security deposit, ECF No. 13 at 4; (3) she was pressured in an intimidating manner to vacate the unit, *id.*, but the referenced texts contradict this, ECF No. 13-1 at 3, 5–6; and (4) unvaccinated dogs were allowed to roam and one of them "attacked" her, causing emotional distress and trauma, ECF No. 13 at 5, when the cited texts show that one of Defendant's dogs barked at Plaintiff, Carrie apologized that the dog snuck out, and Plaintiff responded, "No worries the smaller one like [sic] me better I guess [dog emoji]," ECF No. 13-1 at 4.

suggesting discriminatory comments do not pertain specifically to her or Defendants.[5]

The Court has distilled the relevant facts, and Plaintiff appears to have drawn unwarranted inferences to presume that Defendants discriminated against her. However, this cannot carry the day. Other than her conclusory statements, Plaintiff does not present plausible facts suggesting that Defendants had discriminatory intent or that they treated similarly situated individuals outside her protected classes more favorably. *See Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004); *Ting v. Adams & Assocs., Inc.*, 823 F. App'x 519, 522 (9th Cir. 2020) (affirming dismissal of Title VII claims because the plaintiff failed to allege facts supporting a reasonable inference that the defendant did not rehire her based on her race or that it treated individuals of different races more favorably and holding that membership in a protected class, without allegations suggesting discriminatory intent, is insufficient).

The Court focuses on the following allegations pertaining to the discriminatory conduct based on Plaintiffs' religion, sex, or LGBTQ status — but

---

[5] For example, Plaintiff alleges that Carrie dislikes Mexicans and Mexican food, ECF No. 13 at 3, but Plaintiff has not identified as Mexican. She also avers that neighbors and/or other renters described Hawaiians as "Reef-Niggers." ECF No. 13 at 6 & n.2. However, Plaintiff has not identified as Hawaiian, and accepting this as true, it was neighbors/renters who used this term.

has carefully reviewed all allegations — to determine whether Plaintiff states an FHA claim:

- Martin shared that he is a member of the Calvary Lutheran Church. ECF No. 13 at 3.

- Carrie shared that Donald Trump was her preferred candidate, which made Plaintiff uncomfortable based on the associated anti-LGBTQ viewpoints. *Id.*

- Plaintiff received hand-written notes after Defendants noticed her cross-dressing in private. *Id.* at 5.

- Plaintiff's "private" area for her unit was used by Defendants to hang underwear and allow their "unfriendly and unvaccinated dogs" to roam free, which prevented her access to the shared restroom, which she "believes . . . were deliberate passive-aggressive responses to the political viewpoints being expressed by . . . Defendants." *Id.*

- Defendants became agitated when Plaintiff declined an invitation to celebrate Christmas with them, which coincided with Hanukah. Harassment followed — though it is not alleged that Defendants themselves were the perpetrators in all instances. Thereafter, Carrie frequently intruded, someone left a fruitcake and bananas on Plaintiff's doorway, and Plaintiff was subjected to verbal harassment late at night, *e.g.*, "psst hey Tinkerbell." *Id.* at 6.

- Defendants started demanding cash and for the unit to be inspected and shown to prospective tenants without the requisite 48-hour notice, and Carrie complained that female clothing clutter would affect her ability to find a new tenant. *Id.*

- Plaintiff overheard Martin telling Carrie "*that Faggot is the one who called the cops.*" *Id.*

- Defendants and another male stalked and followed Plaintiff to the courthouse, where she had sought a restraining order. *Id.* at 7.

9

- Defendants cut off her internet, electricity, and fresh water after learning about her LGBTQ status and religious beliefs. *Id.* at 10.

- The conditions changed from friendly in August to hostile by November. *Id.*

Despite multiple opportunities to amend the pleadings, Plaintiff's allegations in the SAC continue to be deficient and the Court cannot reasonably infer that Defendants discriminated against her because of her religion, sex, LGBTQ status,[6] or otherwise, in violation of the FHA. Plaintiffs' allegations are rife with contradictions and/or are unsupported by the evidence supplied by Plaintiff, thereby undermining their plausibility, and the Court need not accept them as true.

First, Plaintiff became delinquent on rent toward the end of her lease. *Id.* at 4 (stating that she was current on rent *until* December 2020, when the harassment began). And although Plaintiff accuses Defendants of forcing her to vacate, her lease ended on January 31, 2021 and she chose to leave the rental at the end of the lease. *Id.* at 1, 4, 6 ("Rent was paid and current until December of 2020 when Plaintiff realized she was going to need to find a new place to live[.]"); ECF No. 13-1 at 13–14; ECF No. 33 at 2 (citing ECF No. 27-3 (notifying Defendants on

---

[6] Plaintiff alleges discrimination on multiple bases, so the Court need not decide at this time whether the FHA's prohibition on sex discrimination encompasses discrimination against transgender/LGBTQ individuals. *See Bostock v. Clayton County*, 590 U.S. ___, 140 S. Ct. 1731 (2020) (upholding transgender/LGBTQ rights under Title VII).

December 22, 2020 that she intended to vacate the rental at the end of January 2021)).

Second, Plaintiff's conclusion that her utilities were cut off because of her religion and LGBTQ status is contradicted by both her earlier claim that it was due to neglected maintenance, *see* ECF No. 13 at 4, 7, and her statement that her relationship with Defendants was friendly in August — when the utilities were affected — and deteriorated by November or December. *Id.* at 4, 9–10.

Third, even assuming Defendants were upset that Plaintiff declined their invitation to celebrate Christmas, it is unclear how leaving a fruitcake and bananas on her doorstep — if it was even them who did so — evinces harassment, let alone discrimination. That Plaintiff paints the gesture as discriminatory, by characterizing the food as derogatory symbols, does not make it so.

Fourth, the purported name calling, some of which has nothing to do with Plaintiff's religion, sex, or LGBTQ status, is remarkably similar or identical to slurs and phrases identified in Plaintiff's other cases in this district:[7]

---

[7] Since January 2020, Plaintiff has filed nine other cases in this district: (1) Civil No. 20-00045 SOM-RT, *Scutt v. Altres*; (2) Civil No. 20-00046 JAO-RT, *Scutt v. Maui Land and Pineapple Co.*; (3) Civil No. 20-00137 JMS-RT, *Scutt v. Haw. Unemployment Ins. Div.*; (4) Civil No. 20-00138 JMS-RT, *Scutt v. Haw. BESSD (SNAP Foodstamp Program)*; (5) Civil No. 20-00187 HG-WRP, *Scutt v. Kaiser Permanente Wailuku Med. Off.*; (6) Civil No. 20-00333 JMS-WRP, *Scutt v. Dorris*; (7) Civil No. 20-00362 JMS-RT, *Scutt v. Carbonaro CPA's & Mgmt. Grp., Inc.*; (8) 20-00375 JAO-KJM, *Scutt v. Family Life Ctr., Inc.*; (9) Civil No. 21-
(continued . . .)

- Civil No. 20-00375 JAO-KJM, *Scutt v. Maui Family Life Center* — claiming that defense counsel (who is located on Oahu) and/or the defendant harassed her at her residence on Maui, where she heard names/phrases such as "King George," "dog," "kike," "poo poo head," "how now brown towel," "Hiawatha," "nigger-raped," "get you raped," "psst hey kike." ECF No. 62 at 1–3, 6–9 (also including a hate speech index); ECF No. 65.

- Civil No. 20-00187 HG-WRP, *Scutt v. Kaiser Permanent Wailuku Medical Office* — accusing the defendant's employees of making disparaging statements about "Native Americans (How Now Brown Towel, Hiawatha, etc.)." ECF No. 73-1 at 4.

- Civil No. 21-00323 JAO-RT, *Scutt v. UnitedHealthcare Insurance Co.* — accusing the defendants' employees and unknown participants of stalking her at her former home on Maui and at random locations on Oahu, calling her names and making statements like "kike," "sand-nigger," "get you raped," "tinkerbell," "white power," "reef-kike," "hula-raped," "ph-kike," "tranny," "lei raped," "Hiawatha," "how now brown towel," and "skike." ECF No. 23-1 at 19–34.

Plaintiff complains about hearing these same types of insults during her tenancy from "neighbors and/or other renters," not Defendants, or from unidentified individuals for months after she left the rental. *See*, *e.g.*, ECF No. 13 at 6 ("white

---

(. . . continued)
00323 JAO-RT, *Scutt v. UnitedHealthcare Ins. Co.* The Court takes judicial notice of these other cases. *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (Courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (internal quotation marks and citations omitted)); *Doe v. Mont. State Univ.*, CV-20-23-BU-BMM-JTJ, 2020 WL 7493128, at *4 (D. Mont. Dec. 21, 2020) (taking judicial notice of companion cases and related pleadings in considering a motion to dismiss because of similar allegations).

power," "seig heil," "psst hey Tinkerbell"); ECF No. 13-1 at 15 (hearing "reef-nigger," "reef-kike," "tinkerbell," "get you raped," "psst hey kike," "get baptized," "faggot," "how now brown towel," and "poo poo head," among other insults, from March 15, 2021 to May 18, 2021 at her various residences).

To the extent Defendants are accused of using any of these slurs or phrases, Plaintiff still fails to plausibly allege discrimination regarding the terms, conditions, or privileges of the rental. As earlier noted, Plaintiff elected to leave at the end of the lease and failed to pay rent, and other grievances concerned maintenance issues during a period preceding the alleged discrimination. Thus, even if there was a change in the terms, conditions, or privileges of the rental, Plaintiff has not plausibly alleged that it was *because of* her religion, sex, or LGBTQ status.

Plaintiff's consistent use of the same slurs across multiple cases suggests exaggeration thereby rendering her allegations implausible. Indeed, Plaintiff insists that these slurs and phrases are being "broadcast" outside her home and/or that unknown individuals who she presumes to be associated with the defendants in her respective cases are calling her names at home and statewide. Accepting Plaintiffs' allegations would require the Court to infer that multiple unrelated individuals and/or entities on different islands are simultaneously engaging in a campaign to torment Plaintiff with identical slurs and conduct at her residence(s)

and elsewhere. The Court is not required to do so. *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013) ("[I]t is within our wheelhouse to reject, as implausible, allegations that are too speculative to warrant further factual development." (citation and footnote omitted)); *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009) ("We are not . . . required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and we do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." (citation omitted)).

Fifth, Plaintiff's reference to hand-written notes is supported exclusively by a photo of a note stating that "cops came cause some neighbor said we werent wearing masks in common area yard – which is total B.S." ECF No. 13-1 at 7. Plaintiff labels this as "threatening" and claims that Carrie said it was "BS that cops came," *id.*; ECF No. 13 at 5–6, when the context clearly reveals that this has nothing to do with Plaintiff's religion, sex, or LGBTQ status, and was not directed at Plaintiff.

Finally, Plaintiff's assertion that Defendants began demanding cash and expedited inspections/showings, and complaining about clutter, do not relate to her religion, sex, or LGBTQ status. The lease expressly includes cash as a method of payment; text communications regarding showings of the unit reflect accommodation and consultation; and Carrie's reference to clutter related to the

14

cleanliness of the unit for showings, not that female clothing is "clutter," as Plaintiff alleges. ECF No. 13-1 at 2–3, 5–6, 13.

In sum, notwithstanding Plaintiff's assertion that Defendants discriminated against her *because of* her religious beliefs, sex/sexual orientation/gender, her allegations do not satisfy the requisite standards. The Court accordingly GRANTS the Motion and finds that Defendants are entitled to judgment as a matter of law. The Court has already twice granted leave to amend and cautioned that the SAC was Plaintiff's final opportunity to cure pleading defects. Inasmuch as further amendment would be futile under the circumstances, the Court declines to authorize leave to amend.

## CONCLUSION

For the reasons stated herein, the Court GRANTS Defendants' Motion to Dismiss, which as been construed as a motion for judgment on the pleadings. ECF No. 33.

IT IS SO ORDERED.

DATED:   Honolulu, Hawai'i, December 17, 2021.



Jill A. Otake
United States District Judge

CV 21-00280 JAO-KJM; *Scutt v. Norton*; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE ALL CLAIMS